**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

—————————————————————————
                                                    )
**JOAN M. KVECH**                                   )
                                                    )
          **Plaintiff,**                            )
                                                    )
**v.**                                              )     **Civil Action No. 1:10-cv-00545-HHK**
                                                    )
**ERIC H. HOLDER, JR., et al.,**                    )
          **Attorney General of the United States** )
                                                    )
          **Defendant.**                            )
—————————————————————————  )

<u>**DEFENDANT'S MEMORANDUM OF POINTS & AUTHORITIES IN SUPPORT OF**</u>
<u>**THE MOTION TO DISMISS THE COMPLAINT**</u>

For the reasons stated below, Eric H. Holder, Jr., Attorney General of the United States ("Defendant"), by and through undersigned counsel, respectfully submits this memorandum of points and authorities in support of his motion to dismiss the complaint ("Complaint") of Joan M. Kvech ("Plaintiff") pursuant to Federal Rules of Civil Procedure ("Rule") 12(b)(1) and 12(b)(6):

<u>**SUMMARY OF ARGUMENT**</u>

In this action, Plaintiff challenges removal from employment with the Federal Bureau of Investigation ("FBI"), alleging claims under the Privacy Act ("the Act"), 5 U.S.C. § 552a, Title VII of the 1964 Civil Rights Act ("Title VII"), 42 U.S.C. § 2000e, et seq., and the Rehabilitation Act, 29 U.S.C. § 794, et seq. None of her claims has merit. First, Plaintiff's Privacy Act claims fail because any disclosure of records pertaining to Plaintiff was authorized by a routine use. Plaintiff additionally has failed to plead facts sufficient to allege actual damages, a requirement under the Act. Moreover, she has not alleged that she has suffered an adverse effect due to the FBI's reliance on inaccurate information contained in her records, nor does she point to any

insufficiency in the measures the FBI uses to maintain and safeguard protected records.  Her claim that she has been unlawfully denied access to protected records fails because she has not yet exhausted administrative remedies.  Finally, Plaintiff's FBI records do not document her protected First Amendment activity and, even if they did, any disclosures were made pursuant to a legitimate law-enforcement purpose.

Second, seeking money damages, Plaintiff asserts constitutional tort claims under the First and Fourteenth Amendments.  These claims must be dismissed because the Court lacks jurisdiction over them:  the sovereign has not waived immunity with respect to claims for money damages arising out of alleged constitutional torts.

Third, Plaintiff's sex-discrimination claim fails because she did not timely exhaust administrative remedies, and because the claim falls short of the pleading standard required by Iqbal.  She raises a subsidiary claim alleging marital-status discrimination that is not cognizable under Title VII or any other federal statute.

Finally, Plaintiff's Rehabilitation Act claim fails because, like her Title VII claims, she failed timely to exhaust administrative remedies.

## FACTUAL & PROCEDURAL BACKGROUND

Plaintiff began employment with the FBI in 1998 as a Special Agent.  Compl. ¶ 10.[1]  She became Assistant Special Agent in Charge ("ASAC") of the Baltimore Field Office in May 2005.  Id. ¶ 12; Letter from Candice M. Will, Assistant Director, Office of Professional Responsibility ("OPR") to Joan Kvech O'Brien (Aug. 6, 2008) ("Removal Letter"), attached as

---

[1]  During her tenure with the FBI Plaintiff was also known as Joan Marie Kvech O'Brien.

Def. Exh. A.[2]  As part of her managerial responsibilities, Plaintiff served as ASAC of the FBI's counterterrorism programs, including the Joint Terrorism Task Force ("JTTF").  Removal Letter at 1.

Around a year later, Plaintiff began a romantic relationship with a JTTF Task Force Officer ("the Task Force Officer") employed with the Montgomery County, Maryland, Police Department ("MCPD").  Compl. ¶ 18; Removal Letter at 1.  During October 2006, the Task Force Officer routinely wore a recording device as part of his work on an undercover investigation with the U.S. Attorney's Office in Baltimore.  Removal Letter at 1.  After recording an undercover meeting, the TFO inadvertently left the device turned on and recorded, among other things, personal telephone conversations between Plaintiff and himself.  Id.  After another undercover meeting, the Task Force Officer again left the device turned on.  Id.  As a result, the Task Force Officer subsequently recorded hours of audio, including an episode of intimate activity he shared with Plaintiff.  Id.; Compl. ¶¶ 33 & 69.

A transcriber later informed the Task Force Officer that his recordings contained personal conversations.  Compl. ¶ 35.  The Task Force Officer instructed the transcriber not to transcribe the extraneous material and then informed Plaintiff that they had been recorded.  Id. ¶ 37; Removal Letter at 1.  Neither Plaintiff nor the Task Force Officer reported the situation to the Task Force Officer's squad supervisor or to the FBI case agent in charge of the undercover investigation.  Removal Letter at 1.  Instead, Plaintiff and the Task Force Officer approached an electronic operation technician and suggested that there was no point in keeping recordings because they had no evidentiary value.  Compl. ¶¶ 42-43; Removal Letter at 1-2.  In response,

---

[2]  The Court may consider the Removal Letter and all other documents Plaintiff refers to in the Complaint without converting this motion to dismiss into one for summary judgment.  See Clark v. Feder Semo & Bard, PC, 634 F. Supp. 2d 99, 106 n.3 (D.D.C. 2009).

the technician refused to destroy or erase any evidence from the recordings.  Compl. ¶ 43; Removal Letter at 2.  Plaintiff also approached a supervisor about having the recordings destroyed or deleted.  Compl. ¶ 46.

Following an investigation by the FBI's Inspection Division, the OPR charged Plaintiff with various offenses connected with her attempts to destroy the recordings and with her inappropriate sexual relationship with the Task Force Officer, her subordinate.  Id. ¶¶ 44-45. After Plaintiff submitted a written response and appeared at an oral hearing regarding the charges, she was removed from the FBI on August 6, 2008.  Id. ¶ 60; Removal Letter at 1.  The Removal Letter provided to Plaintiff stated that she (1) had engaged in an investigative deficiency related to her attempt to destroy evidence; (2) prepared and submitted false and misleading forms describing the recordings; (3) had an improper relationship with a subordinate; and (4) lacked candor.  Removal Letter at 3-9.  The Removal Letter explicitly stated on six separate occasions that Plaintiff was being dismissed from the FBI.  See id. at 1 & 10. Additionally, on two occasions it informed Plaintiff that her removal was effective immediately. See id. at 12 ("The date and time of delivery [of the Removal Letter] will serve as the effective date and time of this dismissal action."); id. at 11 ( "If an appeal is filed for any action other than a dismissal, the OPR disciplinary penalty will be held in abeyance pending the appellate decision.") (emphasis in original).

Plaintiff appealed to the FBI's Disciplinary Review Board ("DRB"), Compl. ¶ 64, and challenged the bases for her removal by, among other things, introducing the results of a polygraph examination she claims proves her innocence.  Compl. ¶ 73-74.  On January 30, 2009, the DRB upheld Plaintiff's removal.  Id. ¶ 77.  Following the DRB's decision, Plaintiff contacted an EEO counselor on February 13, 2009 – 192 days after her removal – and asserted claims of

age, sex, and marital-status discrimination.  Id. ¶ 79; Complaint of Discrimination (Feb. 13, 2009), attached as Def. Exh. B.  She did not raise a claim of disability discrimination.  See Def. Exh. B.  Plaintiff then filed a formal complaint of discrimination on April 27, 2009, of which the FBI acknowledged receipt on May 5, 2009.  Compl. ¶ 80.  Thereafter, Plaintiff's counsel sent a letter to the FBI's EEO office on June 17, 2009, disputing the issues accepted for EEO investigation and asserted on Plaintiff's behalf, for the first time, a claim that the FBI discriminated against Plaintiff under the Rehabilitation Act "in that it perceived Ms. Kvech as an alcoholic and predicated its actions on this perception…."  Letter from Kevin E. Byrnes, Esq., to Veronica Venture (June 17, 2009) at 2, attached as Def. Exh. C.

Plaintiff filed her Complaint with this Court on April 2, 2010.  Defendant responds below.

## STATUTORY BACKGROUND

The Privacy Act "is primarily designed to provide individuals with more control over the gathering, dissemination, and accuracy of information about themselves contained in government files."  Vymetalik v. FBI, 785 F.2d 1090, 1092 (D.C. Cir. 1986) (citing Greentree v. United States Customs Serv., 674 F.2d 74, 76 (D.C. Cir. 1982)).  This Court has explained that the Act constitutes "a code of fair information practices" that applies to federal agencies which use a "system of records" to collect, store, and disseminate personal information about [individuals]."  Doe v. United States, 821 F.2d 694, 699 (D.C. Cir. 1987) (quoting Smiertke v. United States Dep't of Treasury, 447 F. Supp. 221, 224 (D.D.C. 1978) (alteration in original)).

The Act requires federal executive agencies to "maintain all records which are used by the agency in making any determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the

determination." 5 U.S.C. § 552a(e)(5).  To promote this mandate, the Act gives individuals the right to access agency records pertaining to them.  See id. § 552a(d)(2).  Upon request, the agency must "permit [an individual]...to review and have a copy made of all or any portion [of the requested record] in a form comprehensible to him" and must "permit the individual to request amendment of a record pertaining to him...."  Id. § 552a(d)(1) & (2).  Individuals also have a right to request review of an agency decision if the agency refuses to amend a challenged record.  See id. § 552(d)(3).  Within thirty days of the request, the agency must complete its review and make a final determination regarding any refusal to amend.  See id. § 552(d)(3).

The Act provides civil remedies for individuals who contend that their rights to accurate recordkeeping or amendment have been violated.  Subsection (g) authorizes a private right of action in a district court whenever an agency "makes a determination under subsection (d)(3)...not to amend an individual's record in accordance with his request" or when an agency "refuses to comply with an individual request under subsection (d)(1)" to access pertinent records.  Id. § 552a(g)(1)(A) & (B).  Individuals also may obtain relief if an agency "fails to maintain any record concerning any individual with such accuracy, relevance, timeliness, and completeness as is necessary to assure fairness in any determination relating to the qualifications, character, rights, or opportunities of, or benefits to the individual that may be made on the basis of such record, and consequently a determination is made which is adverse to the individual...."  Id. § 552a(g)(1)(C).  In the event of a lawsuit, the Act authorizes a district court to review de novo the agency's classification or amendment decisions and to order the agency to amend the challenged records when warranted.  See id. § 552a(g)(2)(A).  Individuals, like Plaintiff, who request money damages, costs, or attorney's fees under Subsection (g)(1)(C) must prove actual

damages resulting from violation of the Act and must demonstrate that the agency acted intentionally or willfully.  <u>See</u> <u>id.</u> § 552a(g)(4).

## **STANDARDS OF REVIEW**

### **I.     FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED**

On motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6), the Court will dismiss a claim if the complaint fails to plead "enough facts to state a claim for relief that is plausible on its face."  <u>Bell Atlantic Corp.</u> v. <u>Twombly</u>, 550 U.S. 544, 570 (2007), <u>abrogating</u> <u>Conley</u> v. <u>Gibson</u>, 355 U.S. 41 (1957).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft</u> v. <u>Iqbal</u>, 129 S. Ct. 1937, 1949 (2009).  Although "[d]etailed factual allegations" are not necessary to withstand a Rule 12(b)(6) motion to dismiss, a plaintiff must furnish "more than labels and conclusions" or "a formulaic recitation of the elements of a cause of action."  <u>Martin</u> v. <u>Arc of Dist. of Columbia</u>, 541 F. Supp. 2d 77, 81 (D.D.C. 2008) (quoting <u>Twombly</u>, 550 U.S. at 555).  The facts alleged in the complaint "must be enough to raise a right to relief above the speculative level," or must be sufficient "to state a claim for relief that is plausible on its face."  <u>Id.</u>

"Determining whether a complaint states a plausible claim for relief will...be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." <u>Iqbal</u>, 129 S. Ct. at 1950.  "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief."  <u>Id.</u> (internal citations and quotation marks omitted).  The court "need not accept inferences unsupported by

7

facts in the complaint, nor must the court accept [Plaintiff's] legal conclusions." Id. (citing Kowal v. MCI Comm'cns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994)).

## II.  LACK OF SUBJECT-MATTER JURISDICTION

On motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), the plaintiff bears the burden of establishing by a preponderance of the evidence that the court has subject-matter jurisdiction. Monument Reality LLC v. Wash. Metro. Area Transit Auth., 535 F. Supp. 2d 60, 67 (D.D.C. 2008). Because subject-matter jurisdiction is "an Art[icle] III as well as a statutory requirement…no action of the parties can confer subject-matter jurisdiction upon a federal court." Akinseye v. Dist. of Columbia, 339 F.3d 970, 971 (D.C. Cir. 2003) (quoting Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 702 (1982)).

When necessary, the Court "may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." Herbert v. Nat'l Acad. of Scis., 974 F.2d 192, 197 (D.C. Cir. 1992). The Court has an "affirmative obligation to ensure that it is acting within the scope of its jurisdictional authority," Grand Lodge of Fraternal Order of Police v. Ashcroft, 185 F. Supp. 2d 9, 13 (D.D.C. 2001), and in doing so may "consider such materials outside the pleadings as it deems appropriate to resolve the question whether it has jurisdiction to hear the case," Sweeney v. Am. Registry of Pathology, 287 F. Supp. 2d 1, 3 (D.D.C. 2003) (construing Herbert and quoting Scolaro v. Dist. of Columbia Bd. of Elections & Ethics, 104 F. Supp. 2d 18, 22 (D.D.C. 2000)).

## ARGUMENT

### I.      PLAINTIFF'S PRIVACY ACT CLAIMS ARE NOT ACTIONABLE.

Though she fails to specify the Subsections of the Act under which her various claims arise, Plaintiff's Complaint raises claims alleging (1) unlawful disclosure; (2) improper safeguarding and maintenance by the agency; (3) improper documentation of her First Amendment activity; and (4) denial of access.  These claims all fail, as shown below.[3]

###      A.      Plaintiff's claims related to disclosure of records fail because all disclosures were made pursuant to an authorized routine use of information.

The Privacy Act's prohibition on disclosure of records without prior written consent of the individual to whom the records pertain is subject to twelve exceptions, including the "routine use" exception.  See 5 U.S.C. § 552a(b)(3).  The Act defines "routine use" as "the use of such record for a purpose which is compatible with the purpose for which [the record] was collected." Id. § 552a(a)(7).  Agencies must publish "each routine use of the records contained in the system [of records], including the categories of users and the purposes of such use," in the Federal Register.  Id. § 552a(e)(4)(D).  These requirements give rise to a two-prong test courts use to determine whether a use is "routine" within the meaning of the Act.  The routine use must be (1) published in the Federal Register; and (2) compatible with the purpose for which the record was collected. See Doe v. U.S. Dep't of Justice, 660 F. Supp. 2d 31, 48 (D.D.C. 2009) (citing U.S. Postal Serv. v. Nat'l Ass'n of Letter Carriers, 9 F.3d 138, 144-46 (D.C. Cir. 1993)).  The

---

[3]      The Privacy Act authorizes civil actions against agencies only.  See 5 U.S.C. § 552a(g)(1).  The Attorney General is not a proper defendant in this action, nor is the FBI.  See Judicial Watch v. FBI, 190 F. Supp. 2d 29, 31 n.1 (D.D.C. 2002).  This motion to dismiss therefore assumes that, for purposes of her Privacy Act claims, Plaintiff intended to sue the Department of Justice ("DOJ"), not Attorney General Holder.

agency's construction of its routine uses is entitled to "great deference." Dep't of the Air Force, Scott Air Force Base, Ill. v. FLRA, 104 F.3d 1396, 1402 (D.C. Cir. 1997).

The DOJ has published notice of the two routine uses applicable here in the Federal Register and has therefore satisfied Doe's first prong.  See 66 Fed. Reg. 33558-01, 2001 WL 697675 (June 22, 2001).[4]  First, Blanket Routine Use No.1 ("BRU-1") provides that protected records may be released

> [i]f any system record, on its face or in conjunction with other information, indicates a violation or potential violation of law (whether civil or criminal), regulation, rule, order, or contract, the pertinent record may be disclosed to the appropriate entity (whether federal, state, local, joint, tribal, foreign, or international), that is charged with the responsibility of investigating, prosecuting, and/or enforcing such law, regulation, rule, order, or contract.

66 Fed. Reg. at 33559.  In addition, the DOJ published another routine use ("BRU-15") allowing release of protected records

> [t]o designated officers and employees of state, local (including the District of Columbia), or tribal law enforcement or detention agencies in connection with the hiring or continued employment of an employee or contractor, where the employee or contractor would occupy or occupies a position of public trust as a law enforcement officer or detention officer having direct contact with the public or with prisoners or detainees, to the extent that the information is relevant and necessary to the recipient agency's decision.

70 Fed. Reg. at 7518.  The disclosures Plaintiff describes in her Complaint fall comfortably within the scope of, and are compatible with, BRU-1 and BRU-15.

Plaintiff alleges that FBI personnel disclosed records to the MCPD pertaining to herself and the Task Force Officer (1) "in connection with Plaintiff's administrative inquiry," Compl. ¶

---

[4]   The DOJ's notices contained in the Federal Register include routine uses for the FBI's Central Records System, Automated Payroll System, Personnel Management System, Employee Health Records System, and other investigative and administrative records systems.  See 66 Fed. Reg. 33558, 2001 WL 697675 (June 22, 2001); 70 Fed. Reg. 7513, 2005 WL 331158 (Feb. 13, 2005).

83; and (2) to enable the MCPD to investigate the Task Force Officer, id. ¶ 90.  BRU-1 and BRU-15 apply to these disclosures, all of which – Plaintiff herself admits – were made with the object of informing the MCPD "as to the status and results of the investigative and disciplinary actions taken against Plaintiff."  Id. ¶ 86.  During an investigation into Plaintiff's and the Task Force Officer's conduct, the FBI disclosed records to the MCPD that indicated "a violation or potential violation of…[a] regulation, rule, [or] order," namely, the Task Force Officer's potential involvement in Plaintiff's various infractions.  66 Fed. Reg. at 33559.  As the Complaint notes, the FBI's investigation into these matters included Plaintiff's contacts with the Task Force Officer and the actions they jointly took with respect to evidence in the custody of the FBI.  See Compl. ¶¶ 32-33, 42-43.  Upon conclusion of its investigation, the FBI provided records regarding the Task Force Officer's involvement to the MCPD pursuant to BRU-15 because the Task Force Officer "occupies a position of public trust as a law enforcement officer."  70 Fed. Reg. at 7518.  The Complaint recognizes as much when it states that the records the FBI disclosed described the "status and results of the investigative and disciplinary actions."  Compl. ¶ 86.  Such releases are well-established as routine uses under the Act.  See, e.g., Little v. FBI, 793 F. Supp. 652, 655 (D. Md. 1992) (release of personnel records to probation authorities); Mandel v. OPM, 244 F. Supp. 2d 146, 152 (E.D.N.Y. 2003) (release of confidential personnel records to former county corrections supervisors); Freeman v. USEPA, 2004 WL 24351409 at *6-*7 (D.D.C. Oct. 25, 2004) (unpublished) (disclosure of records that may indicate potential criminal, civil, or regulatory violation to state or local law enforcement agency).  BRU-1 and BRU-15 thus immunize the DOJ from Plaintiff's claim of unlawful disclosure.

Plaintiff's claim also fails because she has not alleged actual damages arising out of an unauthorized disclosure of records pertaining to her.  Plaintiff is entitled to civil remedies under Subsection (b) of the Act "only if the violation had an adverse effect on [her]."  Gamble v. Dep't of Army, 567 F. Sup. 2d 150, 155 (D.D.C. 2008).  Moreover, Plaintiff must allege "actual damages" arising out of the adverse effect of the alleged disclosure in order to "qualify" under Subsection (b).  Doe v. Chao, 540 U.S. 614, 620 (2004).  Accordingly, Plaintiff "must establish not only that [s]he was adversely affected by the improper disclosure, but also that [s]he suffered some harm for which damages can reasonably be assessed."  Mulhern v. Gates, 525 F. Supp. 2d 174, 181-82 (D.D.C. 2007) (quoting Doe, 540 U.S. at 621) (internal quotation marks omitted).

Here, Plaintiff's assertion that the alleged disclosures "harmed her reputation, standing, trade, and profession," Compl. ¶ 105, is insufficient to demonstrate actual damages or a direct adverse effect on her within the meaning of the Act.  See, e.g., Doe v. United States Dep't of Justice, 660 F. Supp. 2d 31, 49 (D.D.C. 2009) (allegations of "direct and indirect injury to [p]laintiff's reputation, embarrassment, humiliation, anxiety, physical upset, emotional upset, physical pain and physical suffering" do not qualify); Mandel, 244 F. Supp. at 153 ("emotional distress and pecuniary loss" are insufficient).

Because all disclosures alleged by Plaintiff were compatible with BRU-1 or BRU-15, and because Plaintiff fails to allege actual damages arising out of such disclosures, Plaintiff's claim of unauthorized release of records should be dismissed.  See Compl. ¶¶ 92-106.

## B.    Plaintiff fails to make out a claim that the DOJ maintained inaccurate records or did not appropriately safeguard records.

Plaintiff's second Privacy Act claim alleges that that FBI failed to properly safeguard her records and knowingly disclosed inaccurate information about her.  See id. ¶¶ 107-111 (Count

Two).  This claim should be dismissed because Plaintiff fails to identify the allegedly inaccurate information disclosed and fails to specify which safeguards applied to her information were improper or insufficient.

Although Plaintiff does not state the Subsection of the Act her claims arise under, she presumably intends to invoke Subsections (e)(5), (e)(6), and (e)(10).  Subsection (e)(5) requires agencies to "maintain all records which are used…in making a determination about any individual with such accuracy, relevance, timeliness, and completeness as is reasonably necessary to assure fairness to the individual in the determination."  5 U.S.C. § 552a(e)(5). Subsection (e)(6) provides that "prior to disseminating any record about an individual to any person other than an agency," an agency must "make reasonable efforts to assure that such records are accurate, complete, timely, and relevant for agency purposes."  Id. § 552a(e)(6). Subsection (e)(10), in turn, requires that agencies "establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records…."  Id. § 552a(e)(10).

The D.C. Circuit requires Plaintiff to establish four elements in order to make out a actionable claim under Subsections (e)(5) and (e)(6).  Plaintiff must show that (1) she has been aggrieved by an adverse determination; (2) the agency failed to maintain her records with the degree of accuracy necessary to assure fairness in the determination; (3) the agency's reliance on the inaccurate records was the proximate cause of the adverse determination; and (4) the agency acted intentionally or willfully in failing to maintain accurate records.  See Chambers v. U.S. Dep't of Interior, 568 F.3d 998, 1006 (D.C. Cir. 2009) (quoting Deters v. U.S. Parole Comm'n, 85 F.3d 655, 657 (D.C. Cir. 1996)); see also Thompson v. Dep't of State, 400 F. Supp. 2d 1, 19

(D.D.C. 2005) (plaintiff must "show not only that the inaccurate records were considered in making the determination, but that an error in the records caused the determination").

Plaintiff's claim of improper maintenance under Subsections (e)(5) and (e)(6) does not satisfy the <u>Chambers</u> criteria.   Though Plaintiff pleads that she has been aggrieved by her removal, she fails to draw any connection between that adverse action and the accuracy of the records she challenges.   Instead, Plaintiff attributes "the actions of the Appellate Panel and Disciplinary Review Board" to "sexist assumptions and stereotypes," Compl. ¶ 130 – not to inaccurate recordkeeping – and argues that those actions amount to "disparate treatment and discrimination based on sex," <u>id.</u> ¶ 127.   Nowhere does she claim that her termination resulted from the FBI's reliance on an inaccurate record.   Nowhere does she plead any fact alleging that an inaccurate record was the "proximate cause" of her termination.   And nowhere does she allege that the FBI willfully or intentionally failed to maintain accurate records about her, as <u>Chambers</u> requires her to do.   Moreover, Plaintiff does not even allege that the records in question are inaccurate; rather, she asserts that they are incomplete because they do not include allegedly exculpatory evidence of Plaintiff's choosing.   <u>See id.</u> ¶ 111.   She thus fails to make out a <u>prima facie</u> case of improper maintenance under Subsections (e)(5) and (e)(6).[5]

Her presumed Subsection (e)(10) claim fails, too.   To state a claim under that Subsection, she must identify the "rule or safeguard…that [the DOJ] should have established but did not." <u>Chambers</u>, 568 F.3d at 1007 n.7 (holding that plaintiff could not sue under Subsection (e)(9) or

---

[5]   To the extent Plaintiff is attempting to bring an amendment claim under Subsection (g)(1)(A), she has failed to exhaust administrative remedies.   <u>See</u> <u>Pailes</u> v. <u>U.S. Peace Corps</u>, 2009 WL 3535482 at *4 (D.D.C. Nov. 2, 2009) ("[A] party challenging the accuracy of an agency's record must first present the claim to the agency and allow the agency to consider whether the records should be amended.") (citing <u>Hill</u> v. <u>United States Air Force</u>, 795 F.2d 1067, 1069 (D.C. Cir. 1986) (per curiam)).

(e)(10) by merely alleging that the agency failed to "safeguard and maintain records"). Plaintiff never does so, offering instead only the barebones claim that "[t]he Bureau failed to safeguard the collected, retrieved, maintained or disseminated records." Compl. ¶ 110. Plaintiff fails to point to any specific deficiency in the extensive rules and regulations regarding the maintenance of Privacy Act-protected records promulgated by the DOJ. See 28 C.F.R. §§ 16.1, et seq.; see also Krieger v. U.S. Dep't of Justice, 529 F. Supp. 2d 29, 54-55 (D.D.C. 2008). Because it is no more than "a formulaic recitation of the elements of a cause of action," this claim cannot survive a motion to dismiss. See Iqbal, 129 S. Ct. at 1949 (quoting Twombly, 550 U.S. at 555). She fails to state a claim upon which relief can be granted by this Court.

### C. Plaintiff fails to make out a claim that the DOJ maintained records describing her exercise of First Amendment activity.

Plaintiff asserts that the FBI has violated Subsection (e)(7) of the Act by maintaining records related to "Plaintiff's personal relationship with the [Task Force Officer]," claiming that such records "implicate [her] First Amendment Right to Freedom of Association." Complaint ¶ 117. The claim is meritless.

First, a sexual relationship with a co-worker is not "expressive activity" within the meaning of the First Amendment. To fall within the ambit of First Amendment protection, "a group must engage in some form of expression, whether it be public or private." Boy Scouts of Am. v. Dale, 530 U.S. 640, 648 (2000). Certain "personal affiliations" undoubtedly qualify, but the Supreme Court has limited its expressive-association analysis in this context to "[f]amily relationships," which, "by their nature, involve deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." Roberts

v. United States Jaycees, 468 U.S. 609, 619-620 (1984) (listing the following as protected associational activity: "family-marriage," "childbirth," "the raising and education of children," "and cohabitation with one's relatives").  Only such intimate, familial relationships "reflect the considerations that have led to an understanding of freedom of association as an intrinsic element of personal liberty."  Id. at 620.  Plaintiff's sexual relationship with the Task Force Officer may be protected by other constitutional provisions, but it does not qualify as expressive activity under the First Amendment.  See, e.g., Lawrence v. Texas, 539 U.S. 558 (2003) (right to consensual homosexual activity protected by Fourteenth Amendment's Due Process clause).

Second, even were the Court to construe Plaintiff's relationship with the Task Force Officer as protected First Amendment activity, the FBI's disclosure of records relating to it was permissible because the disclosures were "pertinent to and within the scope of an authorized law enforcement activity."  5 U.S.C. § 552a(e)(7).  "Although the Privacy Act does not define 'law enforcement activity,' [the D.C. Circuit] ha[s] interpreted the phrase broadly."  Sieverding v. U.S. Dep't of Justice, 2010 WL 917830 at *6 (D.D.C. Mar. 24, 2010) (quoting Maydak v. United States, 363 F.3d 512, 517 (D.C. Cir. 2004)) (alterations in original).  Thus, to be exempt from Subsection (e)(7), records need only be "relevant to an authorized criminal investigation or to an authorized intelligence or administrative one."  Id. (quoting Nagel v. United States Dep't of Health, Educ. & Welfare, 725 F.2d 1438, 1441 n.3 (D.C. Cir. 1984)); see also J. Roderick MacArthur Found. v. FBI, 102 F.3d 600, 603 (D.C. Cir. 1996) (holding that valid law enforcement activities require neither an active investigation nor a "current law enforcement necessity").  The records challenged here were disclosed to the MCPD as part of the FBI's administrative investigation into Plaintiff's and the Task Force Officer's violations of the FBI Offense Code and comfortably fall within the Act's definition of "law enforcement activity."

16

Third, Plaintiff's claim fails because she has not identified the records the release of which allegedly violated Subsection (e)(7).  A Subsection (e)(7) claim "must fail" when a plaintiff cannot show that the content of the record in question "describes how plaintiff engaged in arguably protected activity."  <u>Reuber</u> v. <u>United States</u>, 829 F.2d 133, 143 (D.C. Cir. 1987).  Without such information, the Court cannot fairly determine whether the information at issue constitutes a "record" under the Privacy Act, whether such information originated from a DOJ "system of records," whether the information falls within the scope of "law enforcement activity," or whether such information qualifies as First Amendment activity.  <u>See, e.g.</u>, <u>Falwell</u> v. <u>Executive Office of the President</u>, 158 F. Supp. 2d 734, 742-43 (W.D. Va. 2001) (holding that plaintiff failed to allege which records violated Subsection (e)(7) and that the court therefore could not determine from the complaint whether such records even existed and, if they did, whether they were recorded for law-enforcement purposes).

Accordingly, Plaintiff's claim under Subsection (e)(7) lacks merit and should be dismissed under Rule 12(b)(6).

**D.     Plaintiff fails to make out a claim that she was denied access to records pertaining to her.**

Plaintiff's final Privacy Act claim erroneously alleges that the FBI has unlawfully denied access to her records.  <u>See</u> Compl. ¶¶ 136-39 (Count Seven).  Although Plaintiff fails to denote the Subsection of the Act under which her claim arises, she presumably seeks to invoke Subsection (g)(1)(B), which provides a civil remedy whenever an agency "refuses to comply with an individual request under subsection (d)(1)...."  5 U.S.C. § 552a(g)(1)(B).  In order to obtain relief under that Subsection, however, she must first exhaust administrative remedies prior to seeking judicial review.  <u>See</u> <u>Dickson</u> v. <u>OPM</u>, 828 F.2d 32, 40-41 (D.C. Cir. 1987); 28 C.F.R.

17

§ 16.45(c) ("If you wish to seek review by a court of any adverse determination or denial of your request, you must first appeal it under this section.").  She has not done so.

Plaintiff alleges that she submitted a Privacy Act request to the FBI for all records pertaining to her misconduct investigation on April 6, 2009.  <u>See</u> Compl. ¶ 137; Letter from Joan Marie Kvech to FBI (Apr. 6, 2009), attached as Def. Exh. D.  The FBI responded by letter on April 13, 2009, notifying Plaintiff that her request had been received and had been assigned Request Number 1128972-000.  <u>See</u> Letter from David M. Hardy, Section Chief, FBI Record/Information Dissemination Section, to Kevin E. Byrnes, Esq. (Apr. 13, 2009), attached as Def. Exh. E.  On May 13, 2009, the FBI then informed Plaintiff that approximately 2,913 pages of documents had been determined to be responsive to her request and notified her of possible duplication fees of $281.30, pursuant to 28 C.F.R. §§ 16.11 and 16.49.  <u>See</u> Letter from David M. Hardy to Kevin E. Byrnes, Esq. (May 13, 2009), attached as Def. Exh. F.  This letter also notified Plaintiff that due to the processing time that such a large request would require, a reduction in the scope of the request would shorten the processing time.  <u>Id.</u>  On three later occasions – July 13, 2009; October 13, 2009; and January 22, 2010 – the FBI notified Plaintiff's attorney by letter of the status of her pending request.  <u>See</u> Letter from David M. Hardy to Kevin E. Byrnes, Esq. (July 13, 2009), attached as Def. Exh. G; Letter from David M. Hardy to Kevin E. Byrnes, Esq. (Oct. 13, 2009), attached as Def. Exh. H; Letter from David M. Hardy to Kevin E. Byrnes, Esq. (Jan. 22, 2010), attached as Def. Exh. I.  Members of the FBI's records management division have since discussed the status of the request via telephone with Plaintiff's attorney, who has agreed to narrow the scope of the requests.  The FBI continues to process Plaintiff's request pursuant to the requirements of 28 C.F.R. § 16.40, <u>et seq.</u>

Plaintiff's access claim under the Act must fail because she pleads no fact establishing that she has exhausted administrative remedies.  Unlike requests made under the Freedom of Information Act, 5 U.S.C. § 552, the Privacy Act does not permit "constructive exhaustion" and prohibits a requester from filing a civil action without having first obtained a final response from the agency.  See Sussman v. U.S. Dep't of Justice, 2006 WL 2850608 at *5 (E.D.N.Y. Sept. 30, 2006) (unpublished) (stating that plaintiff "failed to exhaust his administrative remedies, a prerequisite to filing a Privacy Act complaint in district court") (citing Davis v. United States, 84 Fed. App'x 97 (D.C. Cir. 2003)); Taylor v. United States Treasury Dep't, 127 F.3d 470, 476-77 (5th Cir. 1997) (applying the "jurisprudential exhaustion doctrine" to dismiss Privacy Act claim for failure to exhaust the agency's non-statutory administrative procedures); Pollack v. United States Dep't of Justice, 49 F.3d 115, 117 n.1 (4th Cir. 1995) (same).  This Court therefore lacks jurisdiction over Plaintiff's denial-of-access claim, which should be dismissed under Rule 12(b)(1).

## II.  SOVEREIGN IMMUNITY BARS PLAINTIFF'S CONSTITUTIONAL TORT CLAIMS.

Plaintiff seeks attorney's fees, costs, and damages in the amount of $500,000.00 for alleged violations of her constitutional rights, claiming that her relationship with the Task Force Officer amounts to exercise of her First Amendment right "to associate freely" and that the "nature" of that relationship "was a private matter protected under the Fourteenth Amendment." Compl. ¶ 118-125 (Count Four).[6]

---

[6]   Though Plaintiff fails to specify the nature of her Fourteenth Amendment claim, Defendant surmises that she intends to invoke the Amendment's Due Process clause, which protects an individual's privacy interest in consensual, intimate relationships.  See Lawrence v. Texas, 539 U.S. 558 (2003).  No other portion of the Amendment could plausibly be read to protect the alleged right to money damages asserted here.

19

These claims fail because "[t]he United States has not waived its sovereign immunity for constitutional tort claims." <u>Hazel</u> v. <u>Lappin</u>, 614 F. Supp. 2d 66, 69-70 (D.D.C. 2009) (citing <u>FDIC</u> v. <u>Meyer</u>, 510 U.S. 471, 477 (1994)); <u>In re Al Fayed</u>, 91 F. Supp. 2d 137, 138 (D.D.C. 2000) ("Sovereign immunity is jurisdictional: a court's jurisdiction to entertain a suit against the sovereign is circumscribed by the limits of the legislature's waiver of sovereign immunity.") (citing <u>Meyer</u>, 510 U.S. at 475).  Sovereign immunity bars a suit for money damages against the federal government unless there is a specific waiver.  <u>See</u> <u>United States</u> v. <u>Nordic Village, Inc.</u>, 503 U.S. 30, 33-34 (1992).  "[S]overeign immunity extends to governmental agencies," like the DOJ, "and to their employees where the employees are sued in their official capacities," like the Attorney General who is sued here.  <u>Hazel</u>, 614 F. Supp. 2d at 70 (citing <u>Meyer</u>, 510 U.S. at 483-86).  Relevant here, the sovereign has not waived immunity for First Amendment tort claims seeking money damages against federal employees in their official capacity.[7]  <u>See, e.g.</u>, <u>Clark</u> v. <u>Library of Congress</u>, 750 F.2d 89, 102-04 (D.C. Cir. 1984) (rejecting First Amendment tort claim for money damages).  Plaintiff's Fourteenth Amendment claim misses the mark entirely since "[i]t is the due process clause of the Fifth, not the Fourteenth, Amendment that applies to actions of the federal government."  <u>Peavey</u> v. <u>Holder</u>, 657 F. Supp. 2d 180, 186 n.6 (D.D.C. 2009).  Plaintiff's constitutional tort claims are meritless and should be dismissed under Rule 12(b)(1).

## III.    PLAINTIFF'S CLAIM OF SEX DISCRIMINATION IS TIME-BARRED.

Plaintiff's claim of sex discrimination under Title VII is time-barred because she failed to timely initiate contact with an EEO counselor within forty-five days of her termination.  <u>See</u> 29 C.F.R. § 1614.105(a)(1) ("An aggrieved person must initiate contact with a Counselor within 45

---

[7]  Defendant presumes that Plaintiff is suing the Attorney General in his official capacity. <u>See</u> Compl. ¶ 2 (stating that the Attorney General "is named in his professional capacity only").

days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."); see also Johnson v. Gonzales, 479 F. Supp. 2d 55, 58 (D.D.C. 2007) ("Dismissal results when a plaintiff fails to exhaust administrative remedies.") (citing Rann v. Chao, 346 F.3d 192, 194-95 (D.C. Cir. 2003)).  Title VII claims are "time-barred if the plaintiff knew, or should have known, about the alleged discriminatory action 45 days prior to [her] filing" an EEO charge.  Johnson v. Gonzales, 479 F. Supp. 2d 55, 59 (D.D.C. 2007) (quoting Aceto v. England, 328 F. Supp. 2d 1, 7 (D.D.C. 2004)).  The time to initiate contact "starts to run when the plaintiff has a reasonable suspicion that [s]he has been the victim of discrimination."  Id.

There can be no question that Plaintiff knew of the allegedly discriminatory action she challenges here – her removal – on August 6, 2008, and that the forty-five-day clock started ticking on that day.  See Compl. ¶ 60; see also Foster v. Gonzales, 516 F. Supp. 2d 17, 22-23 (D.D.C. 2007) (issuance of removal letter from FBI triggers forty-five-day period).  The Removal Letter explicitly informed her of the removal on six separate occasions, see Removal Letter at 1, 10, and stated that her removal would not be held in abeyance pending appeal, see id. at 11.  The Removal Letter even explains that upon its delivery, Plaintiff would be escorted off the premises following a reasonable opportunity to gather her personal belongings.  See id. at 11.  Yet Plaintiff admits that she did not initiate EEO contact until after the DRB affirmed her removal on January 30, 2009.  Compl. ¶ 79.[8]  Indeed, Plaintiff's first contact with an EEO

---

[8]  Plaintiff cannot count the date of the DRB's affirmance as the effective date of her termination on which the forty-five-day period begins.  See Delaware State College v. Ricks, 449 U.S. 250, 261 (1980) ("the pendency of a grievance, or some other method of collateral review of an employment decision, does not toll the running of the limitations periods") (citing Electrical Workers v. Robbins & Myers, Inc., 429 U.S. 229 (1976)) (footnote omitted); see also Smith v. Potter, 445 F.3d 1000, 1007 n.19 (7th Cir. 2006) ("[I]n [appellant]'s case the limitations

counselor was on February 13, 2009 – 192 days after her removal.  <u>See</u> Def. Exh. B.  The plain

language of the Removal Letter eliminates any possibility that Plaintiff "did not know and

reasonably should not have known that the discriminatory…personnel action occurred."  29

C.F.R. § 1614.105(a)(2).  "When an adverse personnel action has been taken, the plain language

of the regulation identifies the effective date of that action" – here August 6, 2008 – "as the only

relevant date for calculating the 45-day deadline."  <u>Foster</u>, 516 F. Supp. 2d at 23.  Plaintiff's sex-

discrimination claim should thus be dismissed under Rule 12(b)(1) since the Court lacks

jurisdiction over it.  <u>See</u> <u>Calhoun</u> v. <u>Prouty</u>, 643 F. Supp. 2d 87, 96 (D.D.C. 2009) (district court

lacks jurisdiction over claims not timely initiated with counselor).

Even were the Court to exercise jurisdiction over the claim, it should be dismissed

because it falls short of <u>Iqbal</u>'s plausibility standard.  A complaint must plead "enough facts to

state a claim to relief that is plausible on its face."  <u>Iqbal</u>, 129 S. Ct. at 1949 (quoting <u>Twombly</u>,

550 U.S. at 570).  "The plausibility standard…asks for more than a sheer possibility that a

defendant has acted unlawfully," and instead requires Plaintiff to plead specific factual

allegations to allow "the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged."  <u>Id.</u> at 1949.  Facts that are "merely consistent with a defendant's liability"

cannot nudge claims "across the line from conceivable to plausible."  <u>Id.</u> at 1951.  And

"[a]lthough a plaintiff's specific factual allegations may be consistent with an employment

discrimination claim, a district court must assess whether there are other more likely

explanations for a defendant's conduct."  <u>Jackson</u> v. <u>Napolitano</u>, 2010 WL 94110 at *3 (D. Ariz.

Jan. 5, 2010) (quoting <u>Iqbal</u>, 129 S. Ct. at 1951) (internal quotation marks omitted).

---

period began to run on the effective date of her termination, and her participation in the union
grievance process would not toll the running of the statute of limitations – regardless of whether
she was kept on the USPS payroll according to her collective bargaining agreement or not.").

Notably absent from the Complaint are any specific factual allegations that support a plausible claim of sex discrimination.  Instead, Plaintiff asserts "[o]n information and belief," Compl. ¶ 54, that male FBI agents facing charges similar to hers are allowed polygraph examinations and other unspecified "opportunities," id. ¶ 59, to defend themselves.  Without pleading any specific facts, Plaintiff also asserts that "[a]gency comparators will establish that similarly situated male agents of the FBI were treated far less harshly than Plaintiff for similar or more serious offense conduct…."  Compl. ¶ 55; see also id. ¶¶ 128-29.  And she challenges the decisions of the OPR and the DRB with the broadside that they were based on "sexist assumptions and stereotypes," but offers the Court nothing more than that assurance.  Id. ¶ 130.  Resort to such conclusory allegations "upon information and belief" is insufficient to survive a Rule 12(b)(6) challenge.  See, e.g., Harmon v. Unisys Corp., 356 Fed. App'x 638, 640 (4th Cir. 2009).  It is not enough for Plaintiff to plead facts "merely consistent with" Defendant's liability, Iqbal, 129 S. Ct. at 1950, as she has done here, nor will "a formulaic recitation of the elements of a cause of action" suffice, id. at 1949.  Because Plaintiff's sex-discrimination claim falls short of Iqbal's plausibility standard, the Court should dismiss it under Rule 12(b)(6).

## IV.    PLAINTIFF'S CLAIM OF MARITAL-STATUS DISCRIMINATION IS NOT ACTIONABLE.

Plaintiff additionally claims that she suffered discrimination based on her marital status.  See Compl. ¶¶ 131-35 (Count Six); Def. Exh. B.  Claims of workplace discrimination or retaliation are limited to causes of action recognized by Title VII, the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 et seq., the Rehabilitation Act, 29 U.S.C. § 794, et seq., or the Equal Pay Act, 29 U.S.C. § 206(d).  See 29 C.F.R. § 1614.103.  None of those statutes, including Title VII, recognizes a cause of action for marital-status discrimination.  See

Christopher v. Billington, 43 F. Supp. 2d 39, 46 (D.D.C. 1999) (noting that Title VII does not provide protection from discrimination based on marital status); Greer v. Brown, 1994 WL 248234 at *2 (D.D.C. May 23, 1994) (unpublished) ("Title VII does not apply to discrimination based on marital status.").    Marital status is not a protected class.   Plaintiff's claim should accordingly be dismissed under Rule 12(b)(6).

## V.    PLAINTIFF'S CLAIM UNDER THE REHABILITATION ACT IS TIME-BARRED.

Plaintiff's final claim is that the FBI's misperception of Plaintiff as an alcoholic led, in part, to her wrongful termination.   See Compl. ¶¶ 140-43 (Count Eight).   Like Title VII, the Rehabilitation Act requires that individuals initiate contact with an EEO counselor within forty-five days of an allegedly unlawful employment action – here, Plaintiff's removal on August 6, 2008.   See 29 C.F.R. §§ 1614.103 & 1614.105(a)(1).   As explained, supra, Plaintiff initiated contact on February 13, 2009 – 192 days following her removal.   See Def. Exh. B.   Plaintiff's Rehabilitation Act claim is thus time-barred and should be dismissed under Rule 12(b)(1).   See Calhoun, 643 F. Supp. 2d at 96.[9]

## CONCLUSION

For the reasons set forth above, Defendant respectfully moves the Court to dismiss Plaintiff's Complaint in full pursuant to Rules 12(b)(1) and 12(b)(6).


Dated: June 28, 2010

---

[9]   No mention is even made of a Rehabilitation Act claim in her EEO complaint of discrimination filed on February 13, 2009.  See Def. Exh. B.  The first mention of any such claim is in the letter Plaintiff's counsel wrote on June 17, 2009, nearly ten months after Plaintiff's removal in August 2008.  See Def. Exh. C.

Respectfully submitted,

RONALD C. MACHEN JR., D.C. Bar #447889
United States Attorney
for the District of Columbia

RUDOLPH CONTRERAS, D.C. Bar #434112
Chief, Civil Division

BY:     /s/  David C. Rybicki
DAVID C. RYBICKI, D.C. Bar #976836
Assistant United States Attorney
Civil Division
555 4th Street, N.W.
Washington, D.C. 20530
Tel:  (202) 353-4024
Fax:  (202) 514-8780

Attorneys for Defendant Eric H. Holder, Jr.,
Attorney General of the United States