**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **JOAN M. KVECH**, | |
| Plaintiff, | |
| v. | Civil Action No. 10-cv-545 (RLW) |
| **ERIC H. HOLDER, JR. United States Attorney General**, | |
| Defendant. | |

**MEMORANDUM OPINION** [1]

In this action Plaintiff Joan M. Kvech challenges her termination from the Federal Bureau of Investigation. According to her complaint, Kvech was terminated after an FBI investigation over her alleged attempts to tamper with evidence while she was the Special Agent in Charge of a joint task force involving the Montgomery County Police Department ("MCPD"). The FBI investigation also focused on the affair she admittedly had with a detective from the MCPD, who was a member of the task force and who was directly involved in gathering the evidence that was at issue. According to Kvech, she did not keep the affair a secret and she did not have authority to evaluate the detective or take any action that would affect the terms or conditions of his employment. At the time of the affair, Kvech was married to a "popular" FBI agent with whom she was experiencing marital difficulties. (Compl. ¶¶ 15-18, 20-21, 133.)

---

[1] This is a summary opinion intended for the parties and those persons familiar with the facts and arguments set forth in the pleadings; not intended for publication in the official reporters.

In this action, Kvech asserts the following claims: Count I, disclosure of her private information in violation of the Privacy Act; Count II, maintenance of inaccurate records in violation of the Privacy Act; Count III, Violation of Privacy Act prohibitions on maintaining records regarding First Amendment activity; Count IV, Violation of First and Fourteenth Amendment protections of free association and privacy; Count V, gender discrimination in violation of Title VII; Count VI, discrimination based on marital status; Count VII, denial of access to records in violation of the Privacy Act; and Count VIII, Violation of the Rehabilitation Act of 1973. (Doc. 1.) [2] The FBI seeks dismissal of all claims pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim upon which relief can be granted.

For the reasons explained below, the Court finds the FBI's motion is due to be granted in part and denied in part. The motion will be granted on the following claims: Count II (Privacy Act-inaccuracy), Count III (Privacy Act-First Amendment), Count IV (First & Fourteenth Amendment claims), Count VI (discrimination based on marital status), Count VII (Privacy Act-access) and Count VIII (Rehabilitation Act). The motion will be denied on Count I (Privacy Act-disclosure) and Count V (Title VII-gender discrimination).

---

[2] In her complaint, Kvech names Attorney General Eric Holder as the sole defendant. The FBI correctly points out, and Kvech does not dispute, that the Department of Justice rather than the Attorney General is the proper defendant in Privacy Act cases. *See Martinez v. Bureau of Prisons*, 444 F.3d 620, 624 (D.C. Cir. 2006) (affirming dismissal of individual defendants because the Privacy Act "concern[s] the obligations of agencies as distinct from individual employees in those agencies"); *see also* 5 U.S.C. § 552a (g)(1).

## ANALYSIS

A.     **Privacy Act Disclosure Claim (Count I):** [3]

Except under certain specified conditions, the Privacy Act prevents federal agencies from disclosing

> any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains. . . .
>
> .   .   .   .
>
> the term "system of records" means a group of any records under the control of any agency from which information is retrieved by the name of the individual or by some identifying number, symbol, or other identifying particular assigned to the individual.

5 U.S.C. § 552a (b); (a)(5).  There are twelve exceptions to this general rule prohibiting disclosure of records.  *See* 5 U.S.C. § 552a (b).  One of those exceptions allows for disclosure "to those officers and employees of the agency which maintains the record who have a need for the record in the performance of their duties."  *Id.* at § 552a (b)(1).  Another exception allows for disclosure of records to other federal agencies with certain restrictions.  *Id.* at § 552a (b)(7).

Still another exception allows for disclosure of records "for a routine use."  *Id.* at § 552a (b)(3).  "[T]he term 'routine use' means, with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected."  *Id.* at § 552a (a)(7).  Each agency must publish in the Federal Register a notice regarding the system of records it maintains, along with an explanation regarding the routine uses of such information.

---

[3]  In her complaint, Kvech does not spell out the precise provisions of the Privacy Act that she believes the FBI violated.  However, in her response to the FBI's motion, she does cite generally to some subsections of the Act.  (*See* Doc. 9, Pl.'s Br. at 4-5.)

*Id*. at § 552a (e)(4)(D).

      1.    <u>Alleged Improper Disclosure</u>

Because she did not give consent, Kvech challenges the FBI's disclosure to the MCPD of information about the investigation. Kvech points out that the disclosure occurred outside of the FBI and, therefore, was not a disclosure "to those officers and employees of the agency which maintains the record." 5 U.S.C. § 552a (b)(1). Additionally, Kvech challenges the disclosure because it was not made to another federal agency or instrumentality, but rather to the MCPD. *See* 5 U.S.C. § 552a (b)(7).

In response, the FBI contends it disclosed the information pursuant to the "routine use" exception. In support of its contention, the FBI relies on its publication of two "routine uses." Blanket Routine Use ("BRU-1") allows disclosure under the following circumstances:

> Violations of Law, Regulation, Rule, Order, or Contract. If any system record, on its face or in conjunction with other information, indicates <u>a violation or potential violation of law</u> (whether civil or criminal), regulation, <u>rule</u>, order, or contract, the pertinent record may be disclosed to the <u>appropriate entity</u> (whether federal, <u>state</u>, local, joint, tribal, foreign, or international), <u>that is charged with the responsibility of investigating, prosecuting, and/or enforcing such law</u>, regulation, <u>rule</u>, order, or contract.

66 Fed. Reg. 33558, 33559 (June 22, 2001) (emphasis added). [4] BRU-15 allows disclosure of

---

[4] BRU-1 applies, *inter alia*, to the following FBI record systems: FBI Central Records System, Bureau Personnel Management System, and Employee Health Records. 66 Fed. Reg. 33558 (June 22, 2001). The "FBI Central Records System" includes FBI "investigative, personnel, applicant, administrative, and general files," including documents relating to "Obstruction of Justice." 63 Fed. Reg. 8659, 8671, 8673 (Classification 72) (February 20, 1998). "Investigative" records include documents relating to "Misconduct Investigations of Officers and Employees of the Department of Justice and Federal Judiciary." 63 Fed. Reg. at 8673 (Classification 62). "Personnel Matters . . . [contain] background investigations of applicants for employment with the FBI and folders for current and former employees." *Id*. at 8673

FBI records:

> To designated officers and employees of <u>state, local</u> (including the District of Columbia), or tribal law enforcement or detention agencies <u>in connection with the hiring or continued employment of an employee</u> or contractor, <u>where the employee or contractor would occupy or occupies a position of public trust as a law enforcement officer</u> or detention officer having direct contact with the public or with prisoners or detainees, <u>to the extent that the information is relevant and necessary to the recipient agency's decision</u>.

70 Fed. Reg. 7513, 7518 (Feb. 14, 2005) (emphasis added).

At first blush, it appears that the disclosures were consistent with the BRUs upon which the FBI relies. According to the allegations found in Kvech's complaint, she was the Special Agent in Charge of a task force that included a Montgomery County detective, with whom she became romantically involved. During the task force investigation, that detective inadvertently recorded private conversations between himself and Kvech that were unrelated to the investigation. When a question arose regarding how to maintain and label these recordings, both Kvech and the detective had conversations with the technician responsible for custody of the evidence. Although Kvech never told the technician to destroy the evidence, the technician "surmised" that Kvech's intent was to have the recordings destroyed. (Compl. ¶¶ 14-15, 18, 33-43.) Ultimately, the FBI investigated the matter and Kvech was terminated for, *inter alia*, "an investigative deficiency related to the alleged attempt to destroy evidence," and "an improper

_____

(Classification 67). These records are maintained "in order to permit the FBI to function efficiently." 66 Fed. Reg. at 8682.

relationship with a subordinate." (*Id.* ¶ 60.) [5] During the course of the investigation, two FBI investigators interviewed an MCPD Captain and disclosed "details concerning Plaintiff's administrative" investigation and provided the Captain with "selective records," in an effort to shore up the charges against Kvech and to encourage the MCPD to investigate the detective. (Compl. ¶¶ 83, 89-90.) [6] Kvech also alleges "on information and belief" that the two FBI investigators "made repeated disclosures as to the status and results of the investigation" to "persons as yet unknown" in the MCPD. (Compl. ¶ 86.) [7]

Given the romantic involvement between Kvech and the detective, the evidence tampering allegations and the detective's possible involvement in the alleged tampering, there is a reasonable basis upon which to argue that the disclosures were made pursuant to BRU-1, which allows disclosures regarding a "violation or potential violation" of a law or a rule to "the appropriate entity (whether federal, state or local . . .) that is charged with the responsibility of investigating, prosecuting, and/or enforcing such law [or] rule . . . ." 66 Fed. Reg. at 33558.

---

[5] On appeal, the FBI's Disciplinary Review Board (DRB) affirmed the dismissal, but for different reasons: (1) mislabeling and storage of evidence; and (2) the "detrimental effect" that resulted from Kvech's "problematic" relationship with the detective. (Compl. ¶ 77.)

[6] Kvech later refers to the "investigation being conducted by" MCPD that was "directed" toward the detective. (Compl. ¶ 101.) It is unclear whether the investigation had already begun when the disclosures were made or it began after the disclosures.

[7] The Court notes that, even post *Ashcroft v. Iqbal*, ___ U.S. ___, 129 S. Ct. 1937 (2009), making allegations based on information and belief is not necessarily fatal to a plaintiff's claims, particularly where, as here, "the facts are peculiarly within the possession and control of the defendant, or where the belief is based on factual information that makes the inference of culpability plausible." *Arista Records, LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (citation omitted).

The problem with this analysis is lack of evidence. At this juncture the record does not contain any evidence regarding precisely what information was disclosed to the MCPD and the extent to which the disclosures fell inside or outside the confines of BRU-1. *See Mandel v. OPM*, 244 F. Supp. 2d 146, 148 (E.D.N.Y. 2003) (listing the documents actually released pursuant to the routine use), *aff'd*, 79 F. App'x 479 (2d Cir. 2003); 5 U.S.C. § 552a (c)(1) (requiring each agency to keep records regarding the date, nature and purpose of each disclosure, as well as identify the name and address of the person(s) to whom the disclosure was made). Moreover, Kvech further alleges that, approximately nine months after the original disclosures, additional disclosures were made by the two original FBI investigators, who at that point were no longer assigned to the investigative unit. (Compl. ¶ 85.) Unknown FBI agents also purportedly made disclosures around this same time. (*Id*.) While Kvech does not allege to whom the disclosures were made, the allegations raise the inference that the disclosures fell outside the confines of BRU-1.

Lack of evidence is also problematic with respect to application of BRU-15. Based on Kvech's complaint, it appears that the MCPD was "investigating" the detective at some point. (*See* Compl. ¶ 101). However, it is unclear to what extent the disclosures were "relevant and necessary to the [MCPD]'s decision." 70 Fed. Reg. at 7518. Thus, dismissal is not warranted based on the FBI's "routine use" defense at this early juncture. [8]

---

[8] This Court is unaware of the extent to which Kvech quarrels with application of the "routine use" exception because Kvech's brief fails to mention the "routine use exception," or address the specific BRUs cited by the FBI. "Under Local Rule 7(b), if a plaintiff does not respond in his Opposition to a claim made in a defendant's Motion to Dismiss it may be treated as conceded*." Bryant v. Pepco*, 730 F. Supp. 2d 25, 29 (D.D.C. 2010) (citation omitted).

2.    Alleged Injury Caused By Disclosure

Even if the FBI's disclosures fell outside of the "routine use" exception, Kvech's claim

cannot go forward if she fails to allege the type of damages compensable under the Privacy Act.

Civil remedies are available where a defendant improperly discloses a plaintiff's information "in

such a way as to have an <u>adverse effect</u> on [the plaintiff]."  5 U.S.C. § 552a (g)(1)(D) (emphasis

added).  The plaintiff must show, therefore, that she suffered an "adverse effect" in the form of

"actual damages" and that the agency "acted intentional[ly] or willful[ly]" when it made the

unauthorized disclosure.  5 U.S.C. § 552a (g)(1)(D); (g)(4)(A).

Kvech's alleged injuries are sufficient to survive the FBI's motion to dismiss.

Specifically, Kvech alleges the disclosures harmed her "reputation, standing, trade and

profession."  (Compl. ¶ 105.)  She further alleges the FBI disclosures subjected her to "ridicule

and humiliation within the law enforcement community and agencies, in which she would

otherwise be employable."  (Compl. ¶ 87.)

Contrary to the FBI's argument, the case law does not foreclose recovery for such harm.

Indeed, the law of this Circuit directly contradicts the FBI's arguments.  Our Circuit has held that

"emotional trauma alone is sufficient to qualify as an 'adverse effect' under Section

552a(g)(1)(D) of the Act."  *Albright v. United States*, 732 F.2d 181, 186 (D.C. Cir. 1984).

Furthermore, the issue of whether the "adverse effect" must cause "actual damage," in the form

---

Although this Court is not willing to treat her claim as conceded at this juncture, the Court
cannot guarantee that it will be so lenient in the future - - particularly when it is Kvech's
obligation to research the law and raise the specific arguments necessary to prosecute her claims.

of out-of-pocket loss, remains undecided by the Court of Appeals.  *See id.*  Thus, Kvech's

request for damages is not foreclosed and her disclosure claim survives. [9]


**B.       Privacy Act Inaccuracy Claim (Count II):**

Kvech challenges the accuracy of the records the FBI maintained about her and she seeks

to recover damages for the alleged inaccuracies. [10]  The Privacy Act imposes a duty on agencies

to "maintain all records which are used by the agency in making any determination about any

individual with such accuracy .  .  .  and completeness as is reasonably necessary to assure

fairness to the individual in the determination."  5 U.S.C. § 552a (e)(5).   To recover damages

against an agency for failing to properly maintain records, a plaintiff must establish:

> (1) [s]he has been aggrieved by an adverse determination; (2) the agency failed to maintain h[er] records with the degree of accuracy necessary to assure fairness in the determination; (3) the agency's reliance on the inaccurate records was the proximate cause of the adverse determination; and (4) the agency acted intentionally or willfully in failing to maintain accurate records.

*Chambers v. United States Dep't of Interior,* 568 F.3d 998, 1007 (D.C. Cir. 2009) (citing *Deters*

---

[9] Kvech should be mindful, however, that eventually she will have to come forward with evidence of "actual harm" and evidence that said harm was caused by the disclosures "as opposed to any other possible influences," such as her termination.  *See Doe v. DOJ*, 660 F. Supp. 2d 31, 50 (D.D.C. 2009).

[10] In her brief, Kvech points out that the statute allows for the aggrieved to request amendment of the record and obtain a formal review if there is a perceived discrepancy.  (Pl.'s Br. at p. 5); *see* 5 U.S.C. § 552a (d)(2) - (d)(3).  In Count II of her complaint, however, Kvech does not specifically ask for relief under the amendment provision.  To the extent her request for "injunctive relief" under Count II is an attempt to have her file amended, she must first exhaust her administrative remedies.  *See id.*

*v. United States Parole Comm'n*, 85 F.3d 655, 657 (D.C. Cir. 1996)); *see* 5 U.S.C. § 552a (e)(5) - (e)(6); (g)(1)(c); (g)(4).

Kvech alleges facts sufficient to support only two of the four required elements. First, she alleges that she was aggrieved by an adverse determination in the form of her termination. Second, Kvech alleges that the FBI acted intentionally in failing to maintain accurate records by prohibiting her from including in the investigative file a favorable polygraph test result. (Compl. ¶¶ 54-55.) According to Kvech, gender bias was the motive behind the FBI's conduct. Further, she claims that the FBI intentionally ignored exculpatory evidence because of her gender. (Compl. ¶¶ 59, 111, 56-58.)

Although she has pled facts sufficient to show she was aggrieved by an adverse determination and the FBI acted intentionally, Kvech has failed to plead facts which might establish: (1) the FBI failed to "assure fairness" by maintaining inaccurate records; and (2) reliance on the inaccurate records was the "proximate cause" of the adverse determination.

"[T]he Privacy Act establishes as the recordkeeper's polestar, 'fairness' to the individual about whom information is gathered." *Doe v. United States*, 821 F.2d 694, 699 (D.C. Cir. 1987). "[I]n the typical case the truth is clearly provable or relatively easily ascertainable," *Deters*, 85 F.3d at 658, and the agency may fulfill its fairness duty by "requiring independent, reliable verification of undocumented damaging bits of information . . . ." *See Doe v. United States*, 821 F.2d at 699 n.14. In cases such as this one, however, where the "truth may lie in the middle ground between divergent accounts," *id*. at 699, "it suffices to adjust the file equitably to reveal actual uncertainty." *See Deters*, 85 F.3d at 658 (internal quotation marks and citations omitted).

In so doing, the agency's only obligation is to ensure fairness with respect to factual or historical errors, not to change judgments reached by the agency. "[T]he Privacy Act was not intended to shield federal employees from the vicissitudes of federal personnel management decisions." *Hubbard v. United States EPA Adm'r*, 809 F.2d 1, 5 (D.C. Cir. 1986) (citation and internal quotation marks omitted).

In Kvech's case, she has not pled facts which might indicate the FBI failed to maintain her records with sufficient accuracy or completeness to ensure fairness. Kvech admits that she responded to the recommendation that she be terminated by "issu[ing] a well documented, and supported, written reply to each and every allegation raised against her," which included her request to take a polygraph examination, letters correcting alleged inaccurate statements attributed to witnesses, and sworn statements from witnesses present during her conversation with the evidence technician. (Compl. ¶¶ 48-51.) In reaching its final decision to terminate her, she claims the agency "disregarded any exculpatory information" and "discounted" the sworn statements. (Compl. ¶¶ 61-62.) Consequently, when she appealed the termination, she submitted a written response reiterating the evidence in her prior submission. (Compl. ¶¶ 66-71.) Specifically, in her appeal she "pointed out line by line, and allegation by allegation, how [she] could not have done what was claimed, and that the statements of the employees who claimed she asked them to 'destroy' and/or 'erase' 'evidence' were inaccurate, inconsistent and misleading." (Compl. ¶ 72.) Moreover, she "bolstered her claims of innocence by providing the [appeal board with the] results from a polygraph examination, which she obtained at her own expense" and she produced the exculpatory affidavits. (Compl. ¶¶ 73, 75) (emphasis added).

11

Although the termination was upheld on appeal, Kvech admits that the appeal board struck "the most serious of the allegations," namely a "lack of candor/lying" charge. (Compl. ¶¶ 77-78.)

Thus, Kvech admits that she defended herself against the charges by submitting the very evidence she claims would have "corrected" the records. As such, she has not asserted any facts to support a claim that the FBI failed to maintain accurate or complete records with reasonable fairness. *See Doe v. United States*, 821 F.2d at 699-702 (finding no accuracy violation where the file for a federal job applicant contained both her version of a conversation and the conflicting version submitted by a State Department special agent who was the only person, other than plaintiff, present during the conversation).

Likewise, Kvech has not pled any facts that might indicate the FBI would have decided against terminating her, but for inaccuracies in her record. Indeed, Kvech admits she obtained some of the relief she sought, she simply disagrees with the termination decision. Her disagreement, however, does not establish that her termination was caused by any inadequacies in the her records. *Lee v. Geren*, 480 F. Supp. 2d 198, 210 (D.D.C. 2007) ("An adverse action is one resulting in the denial of a right, benefit, entitlement, or employment by an agency which the individual could reasonably have been expected to have been given if the record had not been deficient.") (quoting OPM Guidelines, 40 Fed. Reg. 28,948, 28,969 (July 9, 1975)). Accordingly, her accuracy claim will be dismissed without prejudice. [11]

---

[11] Kvech also alleges that the FBI failed to "safeguard" the records. (Compl. ¶ 110.) Presumably she brings this claim pursuant to 5 U.S.C. § 552a (e)(10), which imposes a duty to

> establish appropriate administrative, technical, and physical safeguards to insure the security and confidentiality of records and to protect against any anticipated threats

**C.** **Privacy Act Maintenance of Records on First Amendment Activities (Count III):**

Next, Kvech challenges the FBI's maintenance of records regarding her relationship with

the MCPD detective. According to Kvech, these records violated her First Amendment right of

free association as protected by the Privacy Act. (Compl. ¶¶ 118-25.) Specifically, the Privacy

Act prohibits agencies from maintaining records:

> describing how any individual exercises rights guaranteed by the First Amendment
> unless expressly authorized by statute or by the individual about whom the record is
> maintained or unless pertinent to and within the scope of an authorized law
> enforcement activity.

5 U.S.C. § 552a (e)(7).

The FBI first argues that the non-marital, non-familial relationship between Kvech and the

detective is not the type protected as freedom of expression under the First Amendment to the

United States Constitution. This argument is contrary to precedent. *See Maydak v. United* States,

363 F.3d 512, 516 (D.C. Cir. 2004) ("[P]hotographs of prisoners visiting with family, friends, and

associates depict the exercise of associational rights protected by the First Amendment . . . .").

---

> or hazards to their security or integrity which could result in substantial harm,
> embarrassment, inconvenience, or unfairness to any individual on whom information
> is maintained.

Kvech's allegations, that FBI employees made unauthorized disclosures about her
investigation, are not sufficient to support a cause of action for failing to safeguard records. There
is nothing in her complaint which might indicate that the employees obtained the information
because the FBI's "administrative and technical safeguards" were insufficient "for the adequate
protection of the confidentiality of the particular information it keeps." *See Kostyu v. United States*,
742 F. Supp. 413, 417 (E.D. Mich. 1990) (citation to Senate Report omitted); *Chambers*, 568 F.3d
at 1008 n.7 ("Chambers has not identified any rule or safeguard, however, that [the agency] should
have established but did not."). Indeed, in her complaint, Kvech alleges that the disclosures were
made "contrary to FBI practices and procedures." (Compl. ¶ 83.)

The FBI also argues Kvech's claim should be dismissed because she "has not identified the records the release of which allegedly violated the provision at issue." (Doc. 7, Def.'s Br. at 17.) This argument is without merit because, at the time this motion was briefed, the FBI had not provided Kvech with access to the records. *See Feldman v. C.I.A.*, ___ F. Supp. 2d ___, Civil Action No. 09–02080 (BAH), 2011 WL 2750939, at *9 (D.D.C. July 13, 2011) ("Indeed, in the typical case, a plaintiff can hardly be expected to know the full details behind an improper disclosure prior to discovery, since those details are most likely to be under the control of the defendant.") Indeed, the case upon which the FBI relies involved a plaintiff who failed to identify the alleged objectionable records <u>after</u> the agency released the requested records. *See Falwell v. Executive Office of the President*, 158 F. Supp. 2d 734, 740-42 (W.D. Va. 2001) (emphasis added).

Next, the FBI contends the records did not violate the Privacy Act because the statute allows agencies to maintain records relating to First Amendment activities, so long as those records are "pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. § 552a (e)(7). Although the Privacy Act does not define "law enforcement activity," the D.C. Circuit has interpreted the phrase broadly to include "authorized criminal, intelligence, or administrative investigation[s]." *Maydak*, 363 F.3d at 517 (citation omitted). Moreover, these "law enforcement" activities "require neither an active investigation nor a current law enforcement necessity." *Id*. (citation and internal quotation marks omitted). Indeed, "[a]n employer's determination whether an employee is performing his job adequately constitutes an

authorized law enforcement activity under Section (e)(7)." *Nagel v. HEW*, 725 F.2d 1438, 1441 (D.C. Cir. 1984).

Applying these standards, Kvech has failed to assert a cognizable Privacy Act First Amendment claim. Even assuming the facts in the light most favorable to her, the FBI maintained the documents for the purpose of investigating her for alleged violations of FBI policy and alleged evidence tampering. Such purposes fall within the "law enforcement activity" exception. *See Nagel*, 725 F.2d at 1441-42 (finding no violation where employer maintained records regarding plaintiff's First Amendment activities pursuant to the hospital's evaluation of appellant's work performance and enforcement of employee standards of conduct). As such, the Court finds that Kvech's First Amendment Privacy Act Claim is due to be dismissed, without prejudice.

**D.      Privacy Act Denial of Access to Records Claim (Count VII):**

Although she submitted a valid request to the FBI for her records on April 6, 2009, Kvech claims the FBI has "failed to produce [her] records and has claimed no valid ground for their non-production." (Compl. ¶¶ 137-38.) She seeks access to her records, as well as damages.

According to the record, approximately one week after her request, the FBI responded with a letter to Kvech's attorney indicating the FBI was searching for her records. (Def.'s Ex. E.) The following month, the FBI sent a letter explaining the agency had located over 2,900 documents in response to her request. (Def.'s Ex. F.) The letter asked Kvech to inform the agency if she was prepared to pay the copying fees for the full record and whether she would consider reducing the size of her request in an effort to expedite disclosure of the records. (*Id.*) On three subsequent

occasions, the FBI sent follow-up letters to Kvech's attorney indicating that the request was

backlogged and awaiting "assignment to an analyst." (Def.'s Exs. G, H, I.) The last letter was

dated January 22, 2010. Without citation to the record, the FBI contends Kvech subsequently

agreed to narrow the scope of her request, but the FBI continues to process the request. (Def.'s

Br. at 18.) [12] Kvech filed the instant lawsuit on April 2, 2010, just short of one year after she first

sought access to her records. Relying on these allegations, the FBI contends Kvech's claim fails

because she has not pled facts sufficient to establish that she exhausted her administrative

remedies.

While the Privacy Act requires that plaintiffs first resort to administrative remedies for

denials of requests to <u>amend</u> records, 5 U.S.C. § 553a (d)(2) - (3), the statute does not contain a

similar requirement with respect to an <u>access</u> claim. *See* 5 U.S.C. § 552a (d)(1). Rather, the DOJ

regulations impose an administrative exhaustion requirement in <u>access</u> claim cases where the

requester has received an adverse determination:

> If you are dissatisfied with a component's response to your request for access to
> records, you may appeal an <u>adverse determination</u> denying your request in any respect.

28 C.F.R. § 16.45 (emphasis added). If after exhaustion the requester is still faced with an

"adverse determination," she may seek judicial review. *See id.* Moreover, the statute only

provides relief where the agency "refuses to comply" with the plaintiff's request for access and the

agency "improperly" withheld the documents. 5 U.S.C. § 552a (g)(1)(B); (g)(3)(A). Thus,

---

[12] Kvech does not dispute these allegations. Rather, she curiously argues that the issue of whether "one or more violations of the Privacy Act did not occur" is a question of material fact. (Pl.'s Br. at 5.)

neither the regulations nor the statute appear to address cases, like the instant one, where an individual requested access to records and faced delays, but the individual is not facing an agency's "improper" "refus[al] to comply," or even an "adverse determination." *See* 5 U.S.C. § 552a (g)(1)(B); (g)(3)(A); 28 C.F.R. § 16.45.

In her brief, Kvech failed to respond to the FBI's exhaustion argument. (*See* Pl.'s Br. at 5-6.) As such, the Court will treat the FBI's argument as conceded and dismiss Kvech's Privacy Act access claim without prejudice. [13]

### E.    First and Fourteenth Amendment Claims (Count IV): [14]

Demanding monetary relief, Kvech asserts claims pursuant to the First and Fourteenth Amendments to the United States Constitution challenging the FBI's interference with her right of free association and her right to privacy. (Compl. ¶¶ 118-25.) "Sovereign immunity, however, . . . bar[s] suits for money damages against officials in their <u>official</u> capacity absent a specific waiver by the government" and no such waiver has been given for First Amendment claims. *Clark v. Library of Congress*, 750 F.2d 89, 103 (D.C. Cir. 1984) (emphasis in original).

---

[13] Even if Kvech had a viable access claim, she would not be entitled to the damages she seeks in her complaint. Rather, she would be entitled to injunctive relief. *See* 5 U.S.C. § 552a (g)(1)(B); (g)(3)(A).

[14] Because Kvech named Attorney General Eric Holder in his official capacity as the defendant, the instant Court treats her claim as one asserted against the agency. *Hazel v. Lappin,* 614 F. Supp. 2d 66, 69 (D.D.C. 2009) ("Official capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent, such that an official capacity suit is, in all respects other than name, to be treated as a suit against the entity.") (citing *Kentucky v. Graham*, 473 U.S. 159 (1985)).

Likewise, Kvech's Fourteenth Amendment claim is not actionable. *See Peavey v. Holder*, 657 F. Supp. 2d 180, 186 n.6. (D.D.C. 2009) ("It is the due process clause of the Fifth, not the Fourteenth, Amendment that applies to actions of the federal government."), *aff'd*, No. 09-5384, 2010 WL 3155823 (D.C. Cir. Aug. 9, 2010). Accordingly, Kvech's constitutional claims are due to be dismissed without prejudice. [15]

**F.     Title VII Gender Discrimination Claim (Count V):**

1.     <u>Timeliness</u>

The FBI's motion is due to be denied with respect to the timeliness defense. It is undisputed that the FBI terminated Kvech on August 6, 2008, via letter. (Def.'s Ex. A; Compl. ¶ 60.) She filed an internal appeal which was denied on January 30, 2009. (Compl. ¶ 77.) Fourteen days later, on February 13, 2009, Kvech first contacted an EEO counselor. (Def.'s Ex. B.) The FBI argues that the termination date, rather than the date of the internal appeal decision, started the running of the 45-day clock. If so, Kvech's first contact with an EEO counselor occurred more than 45 days after her termination; indeed the EEO contact occurred 192 days after her termination. If, however, the date of the appeal started the clock, then Kvech's consultation with the EEO counselor was timely.

---

[15]     Another basis exists to dismiss Kvech's constitutional claims. She failed to respond to the FBI's arguments and, therefore, those arguments are conceded. *See Bryant,* 730 F. Supp. 2d at 29 (citing LCvR 7(b)).

To satisfy the exhaustion requirement, federal employees "must initiate contact with [an EEO] Counselor within 45 days of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). The regulations do not define "effective date" and neither the regulations nor the statute provide guidance for deciding cases such as the instant one: specifically, whether the "effective date" is the date the federal employee is terminated or the date her internal appeal is denied. There appears to be no dispositive case law on point and the instant court is not persuaded by the FBI's reliance on *Delaware State College v. Ricks*, 449 U.S. 250, 261 (1980), in support of its argument that the date of the final appeal cannot constitute the "effective date." *Ricks* involved a non-federal employee who was obligated to file an EEOC compliant within 180 days "after the alleged unlawful employment practice occurred." *Id*. at 257 (citing 42 U.S.C. § 2000e-5(e)). Private sector employees do not have the benefit of using the "effective date" of the decision as a starting point.

Even if the clock began to run on Kvech's termination date, her claim could still survive. The timely pursuit of Title VII administrative remedies "is not a jurisdictional prerequisite to suit in federal court, but a requirement that, like a statute of limitations, is subject to waiver, estoppel, and equitable tolling." *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). Indeed, as Kvech points out in her brief, the regulations provide that "[t]he agency or the Commission shall extend the 45-day time limit . . . when the individual shows that he or she was not notified of the time limits and was not otherwise aware of them . . . ." 29 C.F.R. § 1614.105(a)(2). In the instant case, there is nothing in the termination letter that even vaguely notified Kvech she was required

to seek EEO counseling within 45 days of her termination date. Thus, the FBI has not met its

burden of establishing Kvech was "notified of the time limits [or] otherwise aware of them." *See*

*id.* Accordingly, the FBI's timeliness argument is unpersuasive at this juncture. *See Bowen v.*

*United States*, 106 F.3d 433, 437 (D.C. Cir. 1997) ("Because untimely exhaustion of

administrative remedies is an affirmative defense, the defendant bears the burden of pleading and

proving it. If the defendant meets its burden, the plaintiff then bears the burden of pleading and

proving facts supporting equitable avoidance of the defense.") (citations omitted). [16]


2.     Prima Facie Case

The FBI's motion is also due to be denied with respect to its reliance on *Ashcroft v. Iqbal*,

___ U.S. ___, 129 S. Ct. 1937 (2009). Kvech alleges male FBI agents facing similar or more

serious offenses were treated less harshly than she. (Compl. ¶¶ 54-55.) Kvech further alleges that

the FBI "ignored exculpatory evidence [during her investigation] and denied Plaintiff

opportunities provided to males to defend herself." (Compl. ¶ 59.) These claims are sufficient at

the motion to dismiss stage to go forward. Although Kvech cannot simply allege "a formulaic

recitation of the elements of a cause of action," *Iqbal* 129 S. Ct. at 1949, the FBI has not directed

---

[16] Additionally, Kvech has an argument that common law equitable principles justify
tolling the 45-day period during the pendency of the appeal. One of the goals behind the EEO
administrative exhaustion requirement is to provide the agency with prompt notice of
employment discrimination disputes and encourage parties to resolve such disputes informally
before resort to judicial review. *See Leo v. Heckler*, 768 F.2d 409, 418 (D.C. Cir. 1985)
(citations omitted). These goals are fostered by allowing the matter to progress through the
agency's internal appeal process before the plaintiff seeks assistance from an EEO counselor.

the Court to any authority which requires that Kvech identify in her complaint which male agents avoided termination when charged with similar or more serious offenses.

### G.      Claim for Discrimination Based on Marital Status (Count VI):

The FBI correctly argues that "marital status" is not a class protected by federal anti-discriminations laws.  *See* 42 U.S.C. § 2000e-2(a); *Johnson v. United States Dep't. of Homeland Sec.,* No. 3:09-cv-975, 2010 WL 2773541, at *3 (N.D.N.Y. July 12, 2010) (citations omitted).  Kvech's argument, without citation to sufficient legal authority, that such a claim is "an extension of her claim of gender-based discrimination" is unavailing.  (*See* Pl.'s Br. at 6.)  To the extent Kvech alleges that married male employees were treated more favorably than she, said claim is encompassed in her gender discrimination claim under Title VII.

### H.      Rehabilitation Action Claim (Count VIII):

The FBI argues that Kvech's Rehabilitation Act claim is time-barred because she did not raise the claim within 45 days after the effective date of her termination.  Indeed, according to the FBI, Kvech did not raise the Rehabilitation Act claim when she made her initial contact with the EEO counselor on February 13, 2009.  Rather, Kvech raised the claim in a letter, on June 17, 2009; this letter was dated 316 days after her termination and 139 days after the date her appeal was denied.  (*See* Def.'s Exs. B & C.)

In her complaint, Kvech alleges that the FBI discriminated against her based on a perceived disability of alcoholism, (Compl. ¶¶ 140-43), but in her brief she failed to address the

FBI's exhaustion argument as it relates to the Rehabilitation Act claim. This failure is lethal to her claim at this juncture. In contrast to Title VII exhaustion requirements, "under the Rehabilitation Act, exhaustion is a jurisdictional requirement that a plaintiff has the burden to plead and prove." *See Carty v. District of Columbia*, 699 F. Supp. 2d 1, 2 n.2 (D.D.C. 2010) (citation omitted), *aff'd on other grounds*, No. 10-7081, 2010 WL 4340405 (D.C. Cir. Oct. 21, 2010). The evidence presently before the Court is not sufficient to meet this burden. Therefore, Kvech's Rehabilitation Claim will be dismissed without prejudice.

## **CONCLUSION**

For the reasons spelled out above, the Court finds the FBI's motion is due to be granted with respect to the following claims: Count II (Privacy Act-inaccuracy), Count III (Privacy Act-First Amendment), Count IV (First & Fourteenth Amendment claims), Count VI (discrimination based on marital status**)**, Count VII (Privacy Act-access) and Count VIII (Rehabilitation Act). The motion will be denied on Count I (Privacy Act-disclosure) and Count V (Title VII-gender discrimination).

SO ORDERED.
September 19, 2011

/s/

_____

Robert L. Wilkins
United States District Judge